UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIPPE BUHANNIC and PATRICK BUHANNIC,

Petitioners,

– against –

TRADINGSCREEN, INC. and JOSEPH AHEARN,

Respondents.

**OPINION AND ORDER**

17 Civ. 07993 (ER)

Ramos, D.J.:

Philippe Buhannic and Patrick Buhannic ("Petitioners"), proceeding *pro se*, petition this Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, to vacate an arbitration award (the "Award"). Petitioners allege that the Award was procured by corruption and that the arbitrators refused to hear pertinent evidence and exceeded their powers. In response, Tradingscreen, Inc. and Joseph Ahearn ("Respondents") present a cross-motion seeking confirmation of the award on the grounds that Petitioners have not produced any evidence sufficient to satisfy the high standard required to overturn an arbitration award.

For the reasons that follow, Petitioners' motion to vacate the Award is DENIED, and Respondents' cross-motion seeking confirmation of the Award is GRANTED.

I. **BACKGROUND**

On June 17, 1999, Petitioners, together with Joseph Ahearn, founded TradingScreen, Inc., and entered into a Founders' Agreement (the "Agreement") that would govern their business

relationship.[1]  Pet'rs' Pet. ¶¶ 17–18, Doc. 1.  At all relevant times, Petitioners acted as directors of TradingScreen, Inc. and held the majority of the founders' stock.  *Id.* ¶¶ 13, 22.  Furthermore, Phillippe Buhannic also acted as CEO at all relevant times.  *Id.* ¶¶ 16, 18.

The Agreement set forth conditions governing how the three founders could vote shares and how TradingScreen, Inc. could repurchase a founder's shares in the event of his termination.  *Id.* ¶¶ 18, 20.  In particular, Section 13 provided that each of the founders agreed to vote their shares to elect and, thereafter, retain Phillippe Buhannic as a director of TradingScreen, Inc., and as the chairman of TradingScreen, Inc.'s board of directors until November 1, 2001.  *Id.* ¶ 21.  Section 22 provided that no amendment could be made to the Agreement absent "Required Consent."  *Id.* ¶ 22.  Section 4.1 went on to define "Required Consent" as the "written consent of the company (TradingScreen, Inc.) and holders of the majority of shares held by the Founders."  *Id.*  For all practical purposes, the "holders of the majority of shares held by the Founders" were Phillippe and Patrick Buhannic.  *Id.*

In early 2011, Philippe Buhannic proposed to amend Section 13 and 22 of the Agreement by requiring founders to vote their shares "as directed by the holders of a majority of the shares held by the Founders" in connection with the election of directors, and by allowing future amendments to be effected solely by a majority of the founders except "to the extent any such amendment directly affects [TradingScreen, Inc.'s] rights" regarding the buy-back of a founder's shares.  Award at 7–8, Doc. 1.  In other words, the two amendments eliminated the requirement for Ahearn's consent because Petitioners held the majority of the founders' shares.  Bruce Rosenthal, corporate counsel to TradingScreen, Inc., informed Petitioners that they could sign the 2011 Amendment dated March 13, 2011 and it could subsequently "be proposed for

---

[1] TradingScreen, Inc. is a provider of electronic trading solutions connecting buy-side sellers and sell-side institutions through a global trading network.  Pet'rs' Pet. ¶ 17.

ratification by the Board effective as of that date." *Id.* at 8. Petitioners signed the 2011 Amendment and executed it on behalf of TradingScreen, Inc., but never presented the 2011 Amendment to the Board for consideration and Joseph Ahearn did not sign the amendment. *Id.* Nonetheless, Petitioners allege that the 2011 Amendment and all amendments that followed were never challenged by Ahearn or questioned in any way because he was "totally comfortable with them." Pet'rs' Pet. ¶ 24.

In late 2015, Petitioners executed the 2015 Amendment acting alone as majority owners of the founders' shares. Award at 8. The 2015 Amendment went even further than its predecessor, totally eliminating Section 22's requirement that TradingScreen, Inc. consent to future amendments that affected its buy-back rights. *Id.* at 9. Once again, Phillippe Buhanic signed the resolution on behalf of TradingScreen, Inc. and the board was not informed. *Id.*

On July 1, 2016, Petitioners executed the 2016 Amendment. *Id.* at 10. In relevant part, the 2016 Amendment repealed the provision allowing TradingScreen, Inc. to buy-back the shares of a terminated founder, required the founders to vote to elect and continue in office Phillippe Buhannic as a director and chairman of the board without any stated end date, and stipulated that only a simple majority of the founders—and not the company—may amend the Agreement. *Id.* at 10–11. The 2016 Amendment was not presented to the board of directors, was not signed by Joseph Ahearn, and did not even contain a signature line for TradingScreen, Inc. *Id.* at 10.

Sometime thereafter, Petitioners instituted an arbitration seeking a determination on the validity of the Amendments pursuant to an arbitration provision in the Agreement. Pet'rs' Pet. ¶ 14. The events leading to the arbitration are poorly recited by the parties and are thus unclear to the Court. However, it is clear that Petitioners brought a separate action against TradingScreen,

Inc. on October 6, 2016 claiming wrongful termination following Phillippe Buhannic's removal as CEO on June 28, 2016. Exhibit F, Doc. 8-6.

On May 3, 2017, evidentiary hearings commenced and continued over 3 days until May 5, 2017. Award at 1. The arbitration was conducted pursuant to the rules of the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association, and was presided by George Gluck, Richard Ziegler, and Chairman Eugene I. Farber (the "Arbitrators"). Award at 19; Resp'ts' Mem. Opp'n at 1, Doc. 7. Petitioners were represented by David Goldstein and Alon Harnoy of Shiboleth LLP.[2] Award at 1. Respondents were represented by John Vassos and Laurie Foster of Morgan Lewis & Bockius LLP. *Id*. The Arbitrators heard testimony from five witnesses, and received over 150 exhibits, and extensive pre- and post-hearing briefing.[3] *Id*. The central question in the arbitration was whether the Amendments were valid and enforceable. Award at 2.

At the evidentiary hearing on May 3, 2017, Ms. Foster stated that she knew Chairman Farber from an unrelated arbitration over fifteen years earlier. Foster Decl. ¶¶ 2–3, Doc. 8. In response, Chairman Farber confirmed the prior arbitration appearance off the record to the parties also on May 3, 2017. Resp'ts' Mem. Opp'n at 4. That same day, Chairman Farber sent a letter to the ICDR case manager formally making the disclosure. *Id.* at 5. The ICDR case manager, in turn, provided the disclosure to all counsel and directed, "if any party has any

---

[2] Initially, Petitioners were represented by Brown Rudnick LLP until the firm withdrew their representation on September 14, 2016. Exhibit D, Doc. 29-4. Petitioners were then represented by Kasowitz Benson Torres LLP until the firm requested to be relieved as counsel on April 20, 2017. *Id.* Following Kasowitz's withdrawal, the arbitration panel offered to adjourn the hearing to permit Petitioners' new counsel (the Shiboleth firm) additional time to prepare for the hearing, but Philippe Buhannic refused that offer, stating that "this is a simple case" and there was no need to adjourn the hearing. Vassos Decl. ¶ 8, Doc. 29.

[3] Although the Award references the exhaustive scope of the evidence considered by the Award, the Award fails to detail the evidence that was considered explicitly.

4

objection to Arbitrator Farber's service based on the supplemental disclosure, please file them with the ICDR on or before May 4, 2017." *Id.* On May 4, 2017, the ICDR case manager emailed all counsel confirming that "we received no objections to Arbitrator Farber's supplemental disclosure." *Id.*

On July 26, 2017, the three-member panel issued its unanimous Award in which it invalidated the Amendments. Award at 1–2, 19. In deciding the issue, the Arbitrators determined that Petitioners' unilateral execution of the Amendments was not made with the consent required by Section 22 of the Agreement. *Id.* at 11. Guided by the U.S. Supreme Court decision in *Curtiss-Wright Corp v. Schoonejongen*, 514 U.S. 73 (1995), the Arbitrators decided that the Petitioners did not have the actual or implied authority to unilaterally execute the Amendments. *Id.* at 12.

On October 17, 2017, Petitioners brought this action to vacate the Award. Pet'rs' Pet. at 1. This Court has jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship.[4] *Id.* On November 9, 2017, Respondents filed a cross-petition to confirm the Award. Resp'ts' Mot., Doc. 6.

## II. LEGAL STANDARD

The FAA provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). District courts "treat a petitioner's

---

[4] Where the amount in controversy is satisfied, the Court has jurisdiction over actions between "citizens of different States," 28 U.S.C. § 1332(a)(1); "citizens of a State and citizens or subjects of a foreign state," except where the "citizens or subjects of a foreign state . . . are lawfully admitted for permanent residence in the United States and are domiciled in the same State" as the U.S. citizens, id. § 1332(a)(2); and "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3). The Court has jurisdiction over the present action because Petitioners are citizens of France, TradingScreen, Inc. has its principle place of business in New York, and Ahearn is a resident of New York. Pet'rs' Pet. ¶¶ 5–9.

application to confirm or vacate an arbitral award as akin to a motion for summary judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (quotation marks omitted). The arbitrator's rationale for an award need not be explained. *Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016). Rather, a court is required to enforce an arbitration award as long as there is a "barely colorable justification" for the outcome reached. *Id*. Confirmation of an arbitration award is thus "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)). This "severely limited" review promotes the twin goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citations omitted).

Conversely, the showing required to avoid confirmation is very high. *Leeward Constr. Co., Ltd.*, 826 F.3d at 638. The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Id.* (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)); *see Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (holding that a party seeking vacatur of an arbitrator's decision "must clear a high hurdle"). Under the FAA, a court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

6

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or *in refusing to hear evidence pertinent and material to the controversy*; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (emphasis added). In addition, as "judicial gloss" on these specific grounds for vacatur, the Second Circuit has held that "the court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted).

### III. DISCUSSION

Petitioners contend that the award must be vacated because: (1) the award was procured by corruption, fraud, and undue means by reason of the Arbitrators failure to disclose partiality, (2) the Arbitrators refused to hear evidence pertinent and material to the controversy, and (3) the Arbitrators manifestly disregarded the law and exceeded their powers by making a decision that resulted in extreme prejudice to Petitioners. The Court addresses each claim in turn.

#### A. Evident Partiality and Corruption

##### 1. **The Alleged Relationship between the Panel Chair and Morgan Lewis**

Petitioners claim that the award should be vacated on the grounds that the arbitration demonstrated "evident partiality and corruption." Pet'rs' Pet. ¶¶ 30, 36; *see also* 9 U.S.C. § 10(a)(2). In particular, Petitioners allege that Ms. Foster of Morgan, Lewis & Bockius LLP knew the panel chairman, Chairman Farber, from a prior arbitration. Pet'rs' Pet. ¶ 30. Petitioners allege that Chairman Farber never disclosed this information to either the parties or

the arbitral institution and that his failure to disclose constitutes evident partiality. *Id.* ¶¶ 30, 34. This argument is completely without merit.

The FAA states that district courts may vacate an arbitral award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). In the Second Circuit, "evident partiality within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984) (internal quotation marks omitted). While it is true that among the circumstances under which the evident-partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties, *see, e.g.*, *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 136–39 (2d Cir. 2007) (finding evident partiality where an arbitrator failed to disclose a potential conflict of interest arising from contract discussions between arbitrator's company and parent of party to arbitration), the Second Circuit does not require that a court immediately "set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information." *Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004) (finding the relationship between an arbiter and a party "too insubstantial" where they failed to disclose co-ownership of an airplane over a decade prior to the proceedings). Further, permitting a party to oppose confirmation of an award based on a claim that it did not assert—but easily could have asserted—at the arbitration, would offend the general principle that "a party cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." *Mandarin Oriental Mgmt., (USA) Inc. v. N.Y. Hotel & Motel*

8

*Trades Council, AFL–CIO*, No. 13 Civ. 3984 (RMB), 2014 WL 345211, at *5 (S.D.N.Y. Jan. 31, 2014) (internal quotation marks omitted).

Here, Petitioners' claim lacks any factual basis. First, Petitioners acknowledge, as they plainly must, that they knew about the prior arbitration because Ms. Foster disclosed it. Pet'rs' Pet. ¶ 30. They made no complaint at the time. *Id.* Second, Petitioners' claim is directly belied by record evidence, which indicates that Chairman Farber disclosed his relationship with Ms. Foster off the record on May 3, 2017, the first day of evidentiary proceedings, and sent a letter to the ICDR case manager formally making the disclosure. Resp'ts' Mem. Opp'n at 4. The ICDR case manager, in turn, provided the disclosure to all counsel and asked that they file "any objection to [Chairman] Farber's service . . . on or before May 4, 2017." *Id.* at 5. As confirmed by the ICDR case manager, Petitioners never filed an objection. *Id.*; Foster Decl. ¶ 4. As Petitioners failed to complain at the time notwithstanding their opportunity to do so, they have waived the objection. *Mandarin Oriental Mgmt., (USA) Inc.*, 2014 WL 345211, at *5. Moreover, the alleged "relationship" between Chairman Farber and Ms. Foster stems from an unrelated arbitration over fifteen years earlier and is, on its face, therefore too insubstantial to constitute evident partiality. Foster Decl. ¶¶ 2–3; *Lucent Techs. Inc.*, 379 F.3d at 28.

### 2. The Alleged Relationship between the Panel and Petitioners' Own Counsel.

Petitioners also allege that the award should be vacated because the relationship between the Arbitrators and Petitioners' own former counsel—Brown Rudnick LLP and Kasowitz Benson, Torres & Friednman LLP—demonstrates evident partiality. Pet'rs' Pet. ¶ 36. In service of this claim, Petitioners proffer a far-fetched, unsubstantiated, and purely speculative conspiracy theory. In their reply, Petitioners allege that their counsel withdrew from their representation three days before the arbitration as part of a conspiracy with the Arbitrators and Respondents'

counsel to "dictate the verdict." Pet'rs' Reply at 8, Doc. 26. In support of this allegation, Petitioners suggest that the Arbitrators were part of a "verdict for pay" scheme whereby the arbitration panel was paid off to secure a verdict in favor of the Respondents. *Id.*

Partiality need not be actually proven to be the basis for a reasonable conclusion of partiality, but it may not be based simply on speculation either. *United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 147 (2d Cir. 1999). However, a petitioner's argument that the other parties "may have failed to disclose other conflicts" is pure speculation that does not amount to evident partiality. *See Nat'l Indem. Co. v. IRB Brasil Resseguros S.A.*, 164 F. Supp. 3d 457, 483 (S.D.N.Y. 2016).

Indeed, Petitioners base their "'verdict for pay' scheme" claim only on the circular reasoning that such an "illogical verdict" can only come from a "'verdict for pay' scheme." Pet'rs' Reply at 8. Petitioners do not allege when, where, or how any payment was made. Moreover, despite claiming that the firms sent business to the panel in exchange for favorable awards, Petitioners do not specifically allege what supposed business was reciprocated. In short, Petitioner's claims are totally unsupported.

**B. Refusal to Hear Pertinent Evidence**

Petitioners offer the naked assertion that the Arbitrators refused to hear pertinent evidence because they did not accept their conclusions regarding the authenticity of certain evidence. In particular, Petitioners allege that Bruce Rosenthal, former general counsel of Tradingscreen, Inc., "doctored the [2011] Board minutes" and that the Arbitrators based their decision on this evidence in spite of being "totally aware of the facts of heavy manipulation of the documents by interested parties."[5] Pet'rs' Pet. ¶ 23. However, Petitioners do not point to

---

[5] Based on the Court's review of the Award, there is no indication that the Arbitrators based their decision on the allegedly doctored evidence as it is nowhere explicitly referenced in the Award. *See* Award. In

10

how the documents were doctored, what information was or was not included, how the minutes were relevant to the tribunal's analysis, nor to what evidence the Arbitrators allegedly refused to hear.

Under Section 10(a)(3) of the FAA, vacatur is warranted if, *inter alia*, the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy. 9 U.S.C. § 10(a)(3). Courts have interpreted Section 10(a)(3) to permit vacatur only if the misconduct amounts to a violation of "fundamental fairness." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). Arbitrators must "give each of the parties to the dispute an adequate opportunity to present its evidence and argument," but need not follow "all the niceties observed by the federal courts" such as the Federal Rules of Civil Procedure or the Federal Rules of Evidence, nor hear all of the evidence proffered by a party. *Id.* at 20 (citations omitted); *see also Glob. Scholarship All. v. Wyckoff Heights Med. Ctr.*, No. 09 Civ. 8193 (RMB), 2010 WL 749839, at *2 (S.D.N.Y. Feb. 24, 2010). To demonstrate arbitral misconduct, the challenging party must show that his "right to be heard has been grossly and totally blocked." *Stifel, Nicolaus & Co. v. Forster*, No. 14 Civ. 6523 (RWS), 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (internal quotation marks omitted). With regards to the authenticity of evidence, the Second Circuit defers to the discretion of the arbitration panel. *Transit Cas. Co. v. Trenwick Reinsurance Co.*, 659 F. Supp. 1346, 1354 (S.D.N.Y. 1987) ("It is not for this Court to second-guess their decision on the authenticity of exhibits").

Here, the Arbitrators' actions do not amount to misconduct warranting vacatur. For one, there is not one iota of evidence suggesting that Petitioners were denied an adequate opportunity

---

any event, Petitioners bear the burden of explaining how the minutes were material to the tribunal's decision. Petitioners' mere assertion that the minutes were doctored in an "unethical way" fails to do that. Pet'rs' Pet. ¶ 23. Lastly, Petitioners do not point to any documents, witnesses, or any other pertinent evidence which they were prevented from presenting.

to present their argument or that their right to be heard had been "grossly and totally blocked." *Stifel, Nicolaus & Co.*, 2015 WL 509684, at *5. Indeed, Petitioners do not point to anything in the record that details what evidence was presented, how the evidence was doctored, or even when, at any point, concerns over the allegedly corrupted evidence were raised to the Arbitrators. *See* Pet'rs' Pet. ¶ 23. In any event, the Court—like that in *Transit Cas. Co.*—defers to the arbitration panel's discretion in determining the authenticity of evidence. *Transit Cas. Co.*, 659 F. Supp. at 1354; *see also Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (noting that "the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award") (internal citation omitted). Accordingly, the Court holds that the Arbitrators did not fail to consider evidence pertinent and material to the controversy.

### C. Arbitrators' Manifest Disregard of Law and Exceeding Arbitrators' Powers

Finally, Petitioners claim that the Arbitrators manifestly disregarded the law and exceeded their powers because the Award went beyond the scope of the arbitration clause. In particular, Petitioners allege that the Arbitrators, rather than solely addressing the issue of the validity of the Amendments, detoured and addressed the issue of whether TradingScreen, Inc. has the capacity to repossess Petitioners' stocks. Pet'rs' Pet. ¶¶ 38–39. Once again, Petitioners' claim lacks any merit and instead reflects a misguided effort on the part of the Petitioners to re-litigate their case before this Court.

"[A]wards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks omitted). To vacate an arbitration award based on manifest disregard of the law, a party must make a two-part showing: (1) that "the governing law alleged to have been

12

ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) that "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011) (internal quotation marks omitted). Where, "the arbitrators do not explain the reason for their decision," it should be upheld if the court "can discern any valid ground for it." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011).

Further, an arbitrator may exceed her powers by considering issues beyond those the parties have submitted for consideration or reaching issues clearly prohibited by law or by the terms of the parties' agreement. *Jock*, 646 F.3d at 122. When a party seeks to vacate an arbitration award by reason of an arbitrator exceeding their power, "the inquiry looks only to whether the arbitrator had the power, based on the parties' submission or the arbitration agreement, to reach a certain issue, and does not consider whether the arbitrator decided the issue correctly." *Seed Holdings, Inc. v. Jiffy Int'l AS*, 5 F. Supp. 3d 565, 586 (S.D.N.Y. 2014). Only if the arbitrator "acts outside of the scope of his contractually delegated authority" may a court overturn his determination. *Id.*

First, the Court finds that the Arbitrators did not manifestly disregard the law. Here, Petitioners fail to make a showing because (1) the law followed by the Arbitrators is "well defined, explicit, and clearly applicable" and (2) the Arbitrators did not "ignore the law or pay little attention to it." *Jock*, 646 F.3d at 121 n.1. The Arbitrators faithfully followed the case law in *Curtiss-Wright Corp v. Schoonejongen*, 514 U.S. 73, 81 (1995), which held that a corporation may act through a director if the director is granted express or implied authority. In the proceedings, the Arbitrators clearly applied the case law to determine that Petitioners did not have express authority because neither the certificate of incorporation nor the bylaws granted the

13

authority. Award at 12. Likewise, Petitioners did not have implied authority because the Amendments affect "internal corporate governance" and therefore do not fall within Philippe Buhannic's authority as CEO to bind the company in matters regarding the "ordinary course of business." *Id.* at 13–15. Thus, the Arbitrators' straightforward application of applicable precedent demonstrates that they did not manifestly disregard the law.

Second, the Court finds that the Arbitrators did not exceed their powers. Here, the Arbitrators' determination is plainly limited to the issue of the validity of the Amendments as submitted for consideration by the parties. Indeed, the Arbitrators frame the central question to be resolved by the Award as follows: "Are the three amendments to the Founders' Agreement . . . valid and enforceable?" Award at 2. Petitioners' claim that the Award addressed the issue of whether TradingScreen, Inc. has the capacity to repossess Petitioners' stock stems from the fact that the Amendments sought to eliminate the company's rights to buy-back the shares of a founder. Because the Amendments were invalidated as a consequence of the Award, Petitioners' efforts to eliminate the company's rights to buy-back the shares of a founder were rendered futile. This consequence, however, is not an opportunity for Petitioners to re-litigate the case. Rather, the consequence directly results from the Arbitrators acting within their power to address the validity of the Amendments and is therefore not a basis for vacatur. *Seed Holdings, Inc.*, 5 F. Supp. 3d at 586 (noting that the Court's inquiry is limited to "whether the arbitrator had the power, based on the parties' submission or the arbitration agreement, to reach a certain issue").

In sum, the Court holds that the Arbitrators did not manifestly disregard the law nor did they exceed their powers.

### D. Confirming the Arbitration Award

The FAA requires that when presented with an application to confirm an arbitration award, the district court "must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Respondents argue that because there is no basis for vacating the award under the FAA, the award must be confirmed. Resp'ts' Mem. Opp'n at 9. For the reasons, set forth above, the Court finds that the Arbitrators' decision is consistent with applicable law and the facts adduced at the hearing, and, accordingly, confirms the arbitration award.

## IV. CONCLUSION

For the reasons stated above, Petitioners' motion to vacate the arbitration award is DENIED and Respondents' cross-motion seeking confirmation of the award is GRANTED. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 1, 6, and close the case.

SO ORDERED.

Dated: July 27, 2018
New York, New York

Edgardo Ramos, U.S.D.J.